## JASPER v. SAWYER et al.

### No. 11317.

United States Court of Appeals
District of Columbia Circuit.

Argued Nov. 7, 1952.

Decided Feb. 19, 1953.

Petition for Rehearing in Banc
Denied August 18, 1953.

See also, 100 F.Supp. 421.

Charles F. O'Neall, Washington, D. C., for appellant.

Fred W. Smith, Atty., Department of Justice, Washington, D. C., with whom Roger P. Marquis, Atty., Department of. Justice, Washington, D. C., was on the brief, for appellees.

Before CLARK, WILBUR K. MILLER, and PROCTOR, Circuit Judges.

WILBUR K. MILLER, Circuit Judge.

An Act of Congress, approved September 7, 1950.[1] authorized and directed the Secretary of Commerce to construct and operate a public airport in or near the District of Columbia and to acquire, by purchase, lease, condemnation or otherwise, a suitable site, including avigation easements or air-space rights. It also provided

" * * * That the choice of site by the Secretary shall be made only after consultation with the governing body in the county in which the airport is to be located, with respect to the suitability of the site to be selected, and its possible impact on the vicinity."

Pursuant to this statutory directive, the Secretary of Commerce selected as a site for the airport a body of land in Fairfax County, Virginia, containing approximately 4,520 acres, and a petition to take the fee simple title thereto for the United States was filed June 13, 1951, in the United States District Court for the Eastern District of Virginia.

Jones D. Jasper is the owner of a farm containing approximately 100 acres in Fairfax County, which lies in the general vicinity of the airport site selected by the Secretary but is not included therein. He instituted this action August 23, 1951,[2] in the United States District Court for the District of Columbia against Charles Sawyer, then Secretary of Commerce, and J. Howard McGrath, then Attorney General, to enjoin and restrain them from further prosecuting the case in the Eastern District of Virginia; to restrain them from filing any declaration of taking in connection therewith; to restrain Sawyer from requesting McGrath or any other person to file any suit to condemn any land in Virginia within 12,500 feet of Jasper's property for the purpose of constructing and operating thereon the proposed airport; and to restrain and enjoin Sawyer from constructing, maintaining and operating a civil airport within 12,500 feet of his property.

Jasper alleged his farm is located about 3,100 feet from one end of a proposed airport runway, that part of his property

---

1. 64 Stat. 770, Title 7, §§ 1401–1412, D.C. Code (1951).

2. The complaint was amended later.

will lie in the direct path of planes using the runway, and that such planes will fly below the navigable air-space above his property. This, he charged, would constitute either a continuing trespass on or an actual taking of his land; and that permitting the condemnation case to proceed would depreciate the value of his property to his irreparable injury. He pleaded that arriving and departing aircraft and other activities of the airport

"* * * will result in loud, startling and distracting noises and glaring lights at night, so that plaintiff's dwelling and that inhabited by his servants will become and continue unfit for residential use. * * * that the raising of chickens, livestock, and/or similar activities on the balance of plaintiff's property * * * will be seriously restricted and impaired and that the possible use of such of plaintiff's property as does not lie within the area of the path of flight will be so restricted and impaired that its use for any purpose whatsoever * * * would be impossible * * *."

Jasper further alleged that if the Secretary carries out his announced intention of operating an airport on the site selected he "will be forced to abandon his home * * or in the alternative be forced to suffer the dangers, fears and annoyances above described," and he added that neither eventuality was desirable to him. The complaint also contained an allegation that, in violation of the proviso in the statute, Sawyer had chosen the site without previously consulting with the governing body of Fairfax County as to the suitability of the site and its possible impact on the vicinity.

The defendants moved to dismiss the amended complaint on the ground of its failure to state a claim upon which relief could be granted, on the ground that the United States was an indispensable party-defendant, and on the further ground that the action was in reality against the United States which had not consented to be sued. They also moved for summary judgment, with respect to which supporting and opposing affidavits were filed. Summary judgment was granted for the defendants, whereupon Jasper filed this appeal.

■■ We agree with the District Court that the Congressional directive with respect to consultation with the governing body of the county was carried out in a satisfactory manner. Moreover, the suit is plainly against the United States, which has not consented to be sued. Another consideration not touched on by the District Court, which seems to us to be fatal to Jasper's purported cause of action, is that his complaint does not show him to have what is called "standing to sue." That is to say, his complaint does not present a justiciable controversy. The action challenged by Jasper does not affect him with sufficient directness and is not sufficiently final to give him the essential standing to sue.[3] The only action shown by the complaint to have been taken by the officials is the filing of the suit to acquire title. None of appellant's property is sought to be condemned; yet Jasper claims the prosecution of the action to take title to property more than half a mile distant from his farm will cause its value to be depreciated.

The other injuries envisaged by Jasper will occur, if at all, only after the airport is in operation. The dangers, fears and

---

**3.** In Joint Anti-Fascist Refugee Committee v. McGrath, 1951, 341 U.S. 123, 150, 71 S.Ct. 624, 637, 95 L.Ed. 817, Mr. Justice Frankfurter said, in a concurring opinion:

"Limitation on 'the judicial Power of the United States' is expressed by the requirement that a litigant must have 'standing to sue' or, more comprehensively, that a federal court may entertain a controversy only if it is 'justiciable.'

* * * * *

"* * * To require a court to intervene * * * something more than adverse personal interest is needed. This additional element is * * * the existence of 'legal' injury [which] has turned on the answer to one or more of these questions: (a) Will the action challenged at any time substantially affect the 'legal' interests of any person? (b) Does the action challenged affect the petitioner with sufficient 'directness'? (c) Is the action challenged sufficiently 'final'?"

annoyances he anticipates from the operation of an airport so far from his farm may never materialize. His forebodings are merely speculative and his suit was premature as well.

We have considered all the appellant's assignments of error but do not deem further discussion necessary.

Affirmed.